# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| ARDISAM, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: 24-3091 |
| | ) |
| CLAM CORPORATION, | ) **Jury Trial Demanded** |
| | ) |
| Defendant. | ) |
| | ) |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Ardisam, Inc. brings this Complaint for Patent Infringement against Defendant Clam Corporation and states and alleges as follows:

## THE PARTIES

1. Plaintiff Ardisam, Inc. ("Ardisam") is a Wisconsin corporation, with its principal place of business at 1730 Industrial Avenue, Cumberland, Wisconsin 54829.

2. Defendant Clam Corporation ("Clam") is a Minnesota corporation, with its principal place of business at 12135 Brockton Lane North, Maple Grove, Minnesota 55369.

## JURISDICTION AND VENUE

3. This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.* This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

4. This Court has personal jurisdiction over Clam because Clam is headquartered in this district, engages in business in this district, and has placed infringing products into the stream of commerce by shipping products into this district (and/or knowing that the products would be shipped into this judicial district), and such infringing products have been sold and used in this district.

5.      Venue is proper in this district under 28 U.S.C. §§ 1391 and 1400(b), because, among other reasons, Clam is subject to personal jurisdiction in this district, has offices in this district, engages in business in this district, has placed infringing products into the stream of commerce by shipping products into this district (and/or knowing that the products would be shipped into this judicial district), and has a regular and established place of business, including physical business facilities, in this district.

## FACTUAL BACKGROUND

6.      Ardisam, located in a small town in Wisconsin, was founded in 1960, initially manufacturing earth augers and ice augers.  Since that time, Ardisam has expanded its offerings and grown to be a leading designer, manufacturer, and seller of innovative outdoor products that make the pursuit of outdoor activities more productive and enjoyable.  Today, Ardisam offers a wide range of seasonal outdoor products, including ice fishing products, camping tents, hunting blinds, treestands, and lawn and garden products.  Among Ardisam's offerings are innovative shelters for ice fishing, including sled shelters.

7.      Ardisam employees Ben Jerry, Trevor Kinderman, and David Hare are the inventors on United States Patent No. 11,959,297, titled "Portable Shelters" ("the '297 patent").  The '297 patent was duly and lawfully issued by the United States Patent and Trademark Office on April 16, 2024, from U.S. Application No. 18/059,017.  The '297 patent is assigned to Ardisam.  A true and correct copy of the '297 patent is attached as **Exhibit A** and made a part hereof.

8.      The inventions of the '297 patent relate to portable shelters for use by, e.g., ice fishermen and outdoor enthusiasts.  The patent is directed to novel stowable and deployable shelters, including a particular frame structure and hinges.  One example of a shelter configured

in accordance with the embodiments of the '297 patent is shown in Figure 2 of the patent, reproduced below:



Fig. 2

9.  By way of example, the independent claims of the '297 patent (claims 1, 8, and 16) recite as follows:

1. A shelter system comprising:
(a) a container;
(b) a first arch pivotably attached to the container, wherein the first arch is pivotable to extend from the container and rest on a surface;
(c) a second arch pivotably attached to the container, wherein the second arch is pivotable to extend upwardly from the container;
(d) a third arch pivotably attached to the container, wherein the third arch is pivotable to extend upwardly from the container between the first arch and the second arch, wherein the third arch comprises a first arm, a second arm, and a transverse portion spanning between the first arm and the second arm, wherein each of the first arm and the second arm is pivotably attached to the container, wherein the first arm comprises a first telescoping joint positioned to facilitate extension of the third arch away from the container and retraction of the third arch toward the container, wherein the first arm comprises a catch, and wherein the catch is a hole or depression in the first arm;
(e) a hinge positioned on the third arch;
(f) a fourth arch pivotably attached to the third arch via the hinge, wherein the fourth arch comprises a second telescoping joint positioned to facilitate extension of the fourth arch away from the third arch and retraction of the fourth arch toward the third arch; and
(g) a flexible shell positionable over at least the third arch and the fourth arch;
wherein:
the first telescoping joint is positioned along the first arm between the hinge and the container; and
the hinge comprises:
  a hinge body comprising a passageway through which the first arm passes;
  a detent element carried by the hinge body and projecting into the passageway toward the first arm, wherein the detent element is positionable to engage the catch; and
  a shaft passing through the hinge body and the fourth arch to facilitate pivoting of the fourth arch relative to the third arch.

**8**. A shelter system comprising:
(a) a container;
(b) a first arch pivotably attached to the container, wherein the first arch is pivotable to extend from the container and rest on a ground surface;
(c) a second arch pivotably attached to the container, wherein the second arch is pivotable to extend upwardly from the container;
(d) a third arch pivotably attached to the container, wherein the third arch is pivotable to extend upwardly from the container between the first arch and the second arch, wherein the third arch comprises a first arm, a second arm, and a transverse portion spanning between the first arm and the second arm, wherein each of the first arm and the second arm is pivotably attached to the container, wherein the first arm comprises a first telescoping joint positioned to facilitate extension of the third arch away from the container and retraction of the third arch toward the container, and wherein the first arm comprises a catch, wherein the catch is a hole or a depression in the first arm;
(e) a hinge positioned on the third arch;
(f) a fourth arch pivotably attached to the third arch via the hinge, wherein the fourth arch comprises a second telescoping joint positioned to facilitate extension of the fourth arch away from the third arch and retraction of the fourth arch toward the third arch;
(g) a pole positionable to extend between (1) the container and the second arch, (2) the second arch and the third arch, (3) the third arch and the fourth arch, or (4) the fourth arch and the first arch; and
(h) a flexible shell positionable over at least the third arch and the fourth arch; wherein:
the first telescoping joint is positioned along the first arm between the hinge and the container;
the hinge comprises a hinge body;
the hinge body carries a detent element positionable to project toward the first arm, the hinge body being positionable to engage the detent element in the catch;
the hinge comprises a shaft that passes through the hinge body to facilitate pivoting of the fourth arch relative to the third arch; and
when the flexible shell is positioned over the third arch and the fourth arch, a door of the flexible shell is positioned beneath the fourth arch.

> **16**. A portable shelter system comprising:
> a frame structure, the frame structure being configurable between a stowed configuration and a deployed configuration; and
> a base for supporting the frame structure;
> wherein:
> (a) the frame structure comprises a plurality of first support arches and a second support arch pivotably attached to one of the first support arches via a hinge positioned on one of the first support arches;
> (b) each first support arch is pivotably attached to the base;
> (c) the hinge comprises a hinge body, a passageway in the hinge body, a detent element supported by the hinge body and positionable to project into a catch in the one of the first support arches, and a pivot shaft passing through the hinge body, wherein the one of the first support arches extends through the passageway, and the pivot shaft connects the second support arch to the hinge, wherein the catch comprises a hole or a depression;
> (d) the stowed configuration comprises the hinge being positioned at a first distance from a pivot point corresponding to the one of the first support arches, and the deployed configuration comprises the hinge being positioned at a second distance from the pivot point corresponding to the one of the first support arches, wherein the second distance is greater than the first distance; and
> (e) the one of the first support arches comprises a telescoping joint positioned between the hinge and the base when the portable shelter is in the deployed configuration.

10. Ardisam offers its own commercial embodiments of the '297 patent, namely, the Eskimo "Eskape" Series of shelters. One example of an Eskimo "Eskape" sled shelter offered by Ardisam is shown below (pre- and post-deployment):





11. Ardisam marks its commercial embodiments of the '297 patent with the patent number, in compliance with the requirements of 35 U.S.C. § 287(a). *See* Ardisam's patent notice website, https://ardisam.com/patents.

12. Clam makes, sells, offers for sale in the United States, and/or imports into the United States, outdoor products, including but not limited to sled shelters. Among those products are shelters that infringe one or more claims of the '297 patent, as discussed below.

13. The accused products include the following Clam products (and any structurally similar products that are not colorably different): Jason Mitchell XT Thermal, Nanook XT Thermal, Nanook XT Thermal – ICE TEAM, Jason Mitchell Nanook XT Thermal, Yukon XT Thermal, Yukon XT Thermal – ICE TEAM, Jason Mitchell Yukon XT Thermal, Voyager XT Thermal, Voyager XT Thermal – ICE TEAM, X200 Thermal XT, X200 Pro XT Thermal, Jason Mitchell X200 Pro XT Thermal, Legend XT Thermal, Legend XT Thermal – ICE TEAM, and Jason Mitchell Legend XT Thermal. These products are referred to hereafter as the "Accused Products."

14. An example of an accused two-man shelter (specifically, the Jason Mitchell XT Thermal) is shown below:



15. An example of an accused one-man shelter (specifically, the Legend XT Thermal) is shown below:



16. Ardisam informed Clam in writing of its infringement of the '297 patent by letter dated April 25, 2024. Clam received the letter via Federal Express on April 26, 2024, and has been aware of the '297 patent and its infringement of the claims of that patent since at least that date.

## COUNT I

### Patent Infringement of U.S. Patent No. 11,959,297

17. Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as though fully set forth herein.

18. Ardisam owns by assignment the entire right, title, and interest in and to the '297 patent.

19. Clam has had knowledge of the '297 patent and its infringement of the '297 patent since at least as early as April 26, 2024.

20. Clam has at no time been licensed under the '297 patent or otherwise authorized to practice the claims of the '297 patent.

21. Clam has directly and/or indirectly infringed, and is currently directly and/or indirectly infringing, literally and/or under the doctrine of equivalents, one or more claims of the '297 patent, in violation of 35 U.S.C. § 271 *et seq.*, by making, using, selling, offering to sell in the United States, and/or importing into the United States infringing products, including without limitation the Accused Products.

22. The Accused Products infringe at least claims 1, 8, and 16 of the '297 patent. By way of example, the claim chart provided herewith as **Exhibit B** (incorporated herein by reference) maps a representative two-man Accused Product (specifically, the Jason Mitchell XT Thermal) against independent claims 1, 8, and 16 of the '297 patent. By way of further example, the claim chart provided herewith as **Exhibit C** (incorporated herein by reference) maps a representative one-man Accused Product (specifically, the Legend XT Thermal) against independent claims 1, 8, and 16 of the '297 patent. Exhibits B and C are based on the publicly available information available to date, are provided for illustrative pleading purposes only, and are not intended to limit Ardisam's contentions, the asserted patent claims, or the Accused Products at issue in this case.

23. Clam contributorily infringes and induces infringement of the '297 patent by offering to sell and selling the Accused Products to customers, buyers, users and others who directly infringe the '297 patent. Clam has had knowledge of the '297 patent since at least April 26, 2024. Clam instructs and induces its customers to use the Accused Products in a manner that directly infringes the '297 patent. Further, the Accused Products are not staple articles of

commerce suitable for substantial noninfringing uses. Clam has known or should have known that its acts would cause its customers to infringe the '297 patent.

24. Clam's infringement of the '297 patent has been willful since at least April 26, 2024.

25. As a direct and proximate result of Clam's willful infringement of the '297 patent, Ardisam has been and will continue to be irreparably damaged and deprived of its rights in the '297 patent in amounts not yet determined, and for which Ardisam is entitled to relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for a judgment that:

A. Clam has infringed one or more claims of the '297 patent, and such infringement has been willful;

B. Clam, its officers, directors, employees, agents, subsidiaries, licensees, servants, successors and assigns, and any and all persons acting in privity or in concert or participation with Clam, be enjoined from further infringement under 35 U.S.C. § 283;

C. Ardisam be awarded all damages adequate to compensate Ardisam for Clam's willful infringement, and such damages be trebled under 35 U.S.C. § 284 and awarded to Ardisam, with interest;

D. This case be adjudged an exceptional case under 35 U.S.C. § 285, and Ardisam be awarded attorneys' fees, costs, and all expenses incurred in this action;

E. Ardisam be awarded all actual and compensatory damages, pre- and post-judgment interest; and

F. Ardisam be awarded such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Ardisam demands a trial by jury on all issues triable by jury.

Dated: August 1, 2024

PERKINS COIE LLP

By  */s/ Andrew Dufresne*

Rodger K. Carreyn (*pro hac vice* pending*)*
RCarreyn@perkinscoie.com
Andrew Dufresne (# 395760)
ADufresne@perkinscoie.com
Gabrielle E. Bina (*pro hac vice* pending*)*
GBina@perkinscoie.com
33 East Main Street, Suite 201
Madison, WI  53703
(608) 663-7460 (Phone)
(608) 663-7499 (Facsimile)

*Attorneys for Plaintiff Ardisam, Inc.*

167927362.1